# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-0277V
UNPUBLISHED

| | |
|---|---|
| AMY L. CATES,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 5, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for petitioner.

*Zoe Wade*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING DAMAGES[1]

On February 22, 2018, Amy L. Cates filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered right shoulder injuries related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on November 10, 2016. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons stated at the May 29, 2020 damages hearing and as set forth below, I find that Petitioner is entitled to an award of damages in the amount **$108,000.00**, **all of which is for past pain and suffering** (as Petitioner requests no other damage components).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.       Relevant Procedural History**

On June 5, 2019, Respondent filed a Rule 4(c) Report conceding that Petitioner's injury was consistent with a SIRVA as defined on the Vaccine Injury Table (ECF No. 31). Thus, Respondent agreed that Petitioner was entitled to compensation. For approximately two months thereafter, the parties attempted to informally resolve the issue of damages. On August 19, 2019, however, Petitioner filed a status report indicating that the parties were in disagreement as to the amount of compensation to be awarded and would like to resolve this by briefing (ECF No. 37).

On November 6, 2019, Petitioner filed a damages brief requesting $130,000.00 in damages for pain and suffering (ECF No. 43). Respondent filed a brief in response on December 11, 2019 proposing an award of $90,000.00 (ECF No. 44). I subsequently informed the parties that this matter was appropriate for an expedited hearing and ruling based upon all evidence filed to date, including the parties' briefing. ECF No. 45. On March 19, 2020, the parties indicated in a joint status report they were amenable to an expedited hearing and ruling, and the case was scheduled to be heard on May 29, 2020. *See* Joint Status Report, filed Mar. 19, 2020, at *1 (ECF No. 46).

On May 29, 2020, I held the scheduled damages hearing in this case by telephone. Counsel for each party received the opportunity to present arguments in support of their position. At the conclusion of the hearing, I announced that I had determined that the award in this case would be $108,000.00. I informed the parties that a brief written decision would follow, summarizing my conclusions and oral decision. [3]

**II.      Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] Although the written transcript of the hearing has not yet been filed in this case, it is incorporated by reference herein.

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013), Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

*higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of petitioner's injury.

When performing the analysis necessary to render a decision on damages, I have reviewed the record as a whole, including the medical records and affidavits filed, plus all assertions made by the parties in written documents and at the May 29th expedited hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases.[5] However, I base my ultimate determination on the specific circumstances of this case.

As the overall record establishes, Petitioner first sought treatment for her shoulder injury on November 21, 2016 – eleven days after receipt of the flu vaccine. Exs. 1 at 1, 2 at 2-4. At this visit, she reported shoulder pain that started the same day as her flu shot, and causing pain significant enough to wake her at night. Ex. 2 at 2-4. A week later, on November 28, 2016, Petitioner received a steroid injection and was referred for occupational therapy. *Id.* at 7-9. The steroid injection provided only three days of pain relief. *Id.* at 15. Accordingly, there is persuasive and ample evidence that Petitioner's injury was initially severe and noticeable.

Petitioner subsequently attended nine (9) occupational therapy sessions between November 29, 2016 and December 28, 2016. Ex. 3 at 25-43. An MRI she obtained in this period showed fluid in the subacromial bursa but no rotator cuff tear. *Id.* at 48. Then, in January 2017, Petitioner underwent right shoulder arthroscopic subacromial bursectomy and right shoulder arthroscopic subacromial decompression under general anesthesia. Ex. 2 at 28-29. Following surgery, Petitioner underwent an additional 19 occupational therapy sessions between January 23, 2017 and March 29, 2017. Ex. 3 at 66-103.

---

[5] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

Petitioner thereafter continued to follow up with her orthopedic care provider after surgery, attending seven (7) appointments from February 1, 2017 to June 19, 2017. Ex. 2 at 31-68. Throughout this time, Petitioner maintains, the injury interfered with her sleep, negatively impacted her job as a real estate agent, and limited her ability to perform daily activities and recreational activities such as bowling and softball with her children, and that her injuries persist to some extent today. *See generally* Exs. 5 and 9.

As I informed the parties during the expedited hearing, there is agreement that Petitioner will receive an award for pain and suffering, leaving only the amount to be determined. Setting an award is more of an art than a science, and in arriving at a number I relied on my expertise and experience in the Vaccine Program, as well as prior reasoned decisions. Both parties presented rational grounds for their requested award amounts, setting a range of outcomes. Although it is tempting to split the difference and award the median between the parties' positions, I have attempted to arrive at a just result based on the evidence presented (although I acknowledge that the range set by the parties correctly framed the possible appropriate outcomes herein).

During argument, Respondent asserted that pain and suffering awards outside the Program should be considered (and noted they tend to be lower in magnitude). However, I find that awards issued *within* the Program are most persuasive. It is important to bear in mind the policy purposes of the Program – that it is no-fault and is intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other reasoned decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.[6]

In this case, the record persuasively establishes that Petitioner sought medical assistance right away, and underwent surgical intervention fairly early – both points supporting a robust award. At the same time, however, this case is overall not as severe as others seen in SPU, and thus is not a case where a higher award is justified. The cases Petitioner cited (*Dobbins*, *Knudson*, and *Collado*)[7] are factually comparable, but all are a bit higher in total award than what is justified in this case.

---

[6] Respondent also cites the decision in *Graves*. Although *Graves* is not binding, I find it persuasively establishes that special masters should not look at the statutory cap on pain and suffering as a continuum, and strive to fit all cases into that based on relative severity, but instead that they should evaluate in *each case* what the amount should be, based on the case's merits, before applying the cap.

[7] The pain and suffering award in *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) was $125,000.00 for pain and suffering. In *Knudson v. Sec'y of Health & Human Servs.*, No. 17-1004V, 2018 WL 6293381 (Fed. Cl. Spec. Mstr. Nov. 7, 2018), the pain and suffering award was $110,000.00. In *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) the pain and suffering award was $120,000.00.

Rather, the case that is most comparable to this case (albeit on the low end) is *Selling*.[8] In *Selling*, Special Master Oler distinguished *Knudson* and *Collado* because the Petitioners in those cases had undergone open and invasive surgeries, while the Petitioner in *Selling* had not. *Selling*, 2019 WL 3425224, at *6. By contrast, the surgery in this case was more like that in *Knudson* and *Collado*. Thus, I find that the award in this case should be somewhat higher than *Selling*, but lower than *Knudson* and *Collado*.

### IV.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $108,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering**.[9]

Accordingly, **I award Petitioner a lump sum payment of $108,000.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[10]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[8] The pain and suffering award in *Selling v. Sec'y of Health & Human Servs.*, No. 16-0588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019) was $105,000.00.

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.